522 A.2d 102

Schuylkill County Tax Claim Bureau and Spruce Creek Energy Company, Inc., Appellants *v.* Tremont Township, Pine Grove Area School District, Minersville Area School District, and Reilly Township, Appellees.

Argued November 19, 1986, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Richard L. Caplan, Schwartzman & Hepps,* with him, *Joseph H. Jones, Jr., Williamson, Friedberg & Jones,* Schuylkill County Solicitor, for appellants.

*Lanny G. Felty,* for appellees, Tremont Township and Reilly Township.

*Richard A. Adams,* for appellee, Pine Grove Area School District.

*Edward E. Kopko,* for appellee, Minersville Area School District.

OPINION BY JUDGE MACPHAIL, March 5, 1987:

Spruce Creek Energy Company, Inc. (Spruce Creek) and Schuylkill County Tax Claim Bureau (Bureau), sometimes collectively referred to herein as Appellants, appeal from orders of the Schuylkill County Court of Common Pleas which disapproved a proposed private sale of delinquent tax properties to Spruce Creek.

At the heart of the matter now before us is a Private Land Sale Agreement (Agreement) dated March 24, 1983 wherein Schuylkill County (County), the Bureau and the Schuylkill County Board of Commissioners were designated as Grantor and Spruce Creek was designated as Grantee. The essence of the Agreement is that the Grantor therein grants an option to Spruce

Creek "to purchase and mine let" certain targeted tracts of real estate totalling approximately 6500 acres held by the Grantor and more specifically described in the Agreement, together with certain easements also more fully described in the Agreement, for an *in situ* coal gasification project. The term of the option is four years. As consideration, Spruce Creek agrees to pay $60,000.00 to Grantor upon execution of the Agreement, of which sum $10,000.00 was to be paid to the County "in its corporate, governmental capacity rather than as Trustee or agent for the tax-delinquent lands" and $50,000.00 each year thereafter during the term of the option. Upon exercising its option, Spruce Creek is obligated to pay the sum of $2,190,000.00, less any sums paid for the option.

It appears that the real estate in question has been delinquent for tax purposes for many years.

The Agreement states that the Grantor's authority to grant the option is found in Section 614 of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §5860.614.

Upon being notified of the proposed sale as then provided in Section 613 of the Law, 72 P.S. §5860.613, the Taxing Districts[1] affected thereby petitioned the court of common pleas to disapprove the sale.

While those proceedings were pending, the County's Board of Elections approved the following non-binding referendum question for the April, 1984 ballot: "Do you approve of underground burning of anthracite coal in Schuylkill County?" The response to the referendum was overwhelmingly negative. Spruce Creek thereupon filed a petition for a change of venue or a

---

[1] Tremont Township, Pine Grove Area School District, Minersville Area School District and Reilly Township (Taxing Districts).

recusal of all judges of the court of common pleas contending that the referendum made it impossible for any judge of the trial court, and especially any judge who might have to face the electors in a retention election, to render an impartial adjudication. The trial court, sitting en banc, denied the petition on August 27, 1984.

We will affirm that order on the well-reasoned opinion of Judge McCLOSKEY reported at 41 Pa. D. & C. 3d 96 (1984) (No. S-515-1983, Court of Common Pleas of Schuylkill County—Civil—Law, filed August 27, 1984).

There then followed a series of evidentiary hearings wherein it was disclosed, *inter alia*, that the Agreement was entered into as part of a stipulation for the settlement of a suit instituted in the Federal District Court by Spruce Creek against the County and the Bureau.

At the conclusion of the hearings, the trial court entered an order on September 27, 1985 granting the Taxing Districts' petitions to disapprove the sale.

Spruce Creek then filed a post-trial motion for relief pursuant to Pa. R.C.P. No. 227.1 alleging errors on the part of the trial court in its opinion and order of September 27, 1985. The motion was denied by order dated December 10, 1985. Spruce Creek, on December 27, 1985, obtained a final judgment on the orders dated September 27 and December 10, 1985. It filed its appeal to this Court that same date. The Notice of Appeal states that the appeal is from the order of December 10, 1985. In its brief, however, Appellant states that it seeks judicial review of the orders entered December 10, 1985, September 27, 1985 and August 27, 1984.[2]

There is a serious question in our minds as to whether the order of September 27, 1985 is properly before us inasmuch as the instant appeal was filed more

---

[2] Inasmuch as the August 27, 1984 order was clearly interlocutory, we have addressed that order earlier in this opinion.

than thirty days after that date. In its opinion addressing the "post-trial motion" filed by Spruce Creek, the trial court notes that the motion was filed pursuant to Pa. R.C.P. No. 227.1. That Rule, of course, relates to procedures after a *trial,* whether jury or non-jury. In subsection (c), the Rule requires that such motions be filed within ten days after verdict, discharge of the jury because of inability to agree or nonsuit in the case of a jury trial or, in the case of a *trial* without a jury, upon notice of nonsuit or the filing of an adjudication or decision.

The proceedings now before us were instituted under and are governed by the provisions of Section 613(a) of the Law, 72 P.S. §5860.613(a), which provided as follows during the time relevant to this action:

> (a)  At any time after any property has been exposed to public sale and such sale is not sold because no bid was made equal to the upset price, as hereinbefore provided, and whether or not proceedings are initiated pursuant to sections 610 through 612.1, the bureau may, on its own motion, and shall, on the written instructions of any taxing district having any tax claims or tax judgments against said property, agree to sell the property at private sale, at any price approved by the bureau. Notice of the proposed sale, stating the price and the property proposed to be sold, shall be given to each such taxing district and to the owner of the property. The corporate authorities of any taxing district, having any tax claims or tax judgments against the property which is to be sold or the owner may, if not satisfied that the sale price approved by the bureau is sufficient, within forty-five (45) days after notice of the proposed sale, petition the court of common pleas of the county to disapprove the sale. The court shall, in such case,

> after notice to each such taxing district, the owner, the bureau and the purchaser, hear all interested parties. After such hearing, the court may either confirm or disapprove the sale as to it appears just and proper. If the sale is disapproved, the court shall at the same time fix a price below which such property shall not be sold.

This, then, clearly was a statutory appeal. There was a hearing, not a trial. Under similar circumstances, this Court recently held that Rule 227.1 applies to civil actions as defined in Pa. R.C.P. No. 1001 and to statutory appeals "only when authorized by statute or local rule." *Johnston v. Department of Transportation*, 102 Pa. Commonwealth Ct. 183, 185, 517 A.2d 585, 585 (1986). Finding no such statutory authority or local rule applicable, we quashed the appeal as untimely filed.[3] In the instant case, the statute under which the proceedings were brought says nothing about post-trial motions. Local Rule 227.1 of the Schuylkill County Court of Common Pleas authorizes post-trial motions in the nature of exceptions to a "decision or adjudication in a non-jury *proceeding*" (emphasis ours). We doubt that this language is intended to encompass statutory appeals; we, therefore, will quash the instant appeal *sua sponte* on jurisdictional grounds.

Notwithstanding our conclusion that this appeal should be quashed we, because of the importance of this case to all litigants and in the interest of judicial economy, will proceed to address the merits of the appeal in the event it is later determined that we erred regarding our disposition of the case on jurisdictional grounds.

---

[3] *See also Schultz v. Board of Supervisors of Jackson Township*, 95 Pa. Commonwealth Ct. 550, 505 A.2d 1127 (1986).

The trial court entered its order of September 27, 1985 disapproving of the sale because it found the Agreement to be "violative and ultra vires of the Real Estate Tax Sale Law." The court held that the Agreement violated the Law in the following respects: (1) the four-year option was in excess of that authorized by Section 614 of the Law, 72 P.S. §5860.614; (2) the provision in the Agreement for the payment of $10,000.00 to the County was contrary to the provisions of Sections 202[4] and 207 of the Law, 72 P.S. §§5860.202, 5860.207; (3) a provision in the Agreement which stated that the County would convey certain easements over surface lands it did not own at the time of the Agreement was executed, was violative of Section 102 of the Law, 72 P.S. §5860.102 and (4) a provision in the Agreement which directed that the Bureau would, concurrent with the execution of the Agreement, execute the deeds conveying the targeted real estate and deliver them to a bank to be held in escrow pending Spruce Creek's exercise of the option, was violative of Section 615[5] of the Law, 72 P.S. §5860.615, which states that the Bureau shall make its deed when the price for the sale of the land has been finally approved. In its opinion in support of its order denying Spruce Creek's motion for post-trial relief, the court said that since it disapproved the sale as being "procedurally illegal and a nullity" it did not comply with that part of Section 613(a) of the Law which states that if the sale is disapproved, the court should fix a price below which the property could not be sold.

---

[4] We think the trial court meant Section 205 of the Law, 72 P.S. §5860.205, which provided at the time relevant to this action, *inter alia,* that "the" moneys received by the Bureau from the private sale of lands shall be paid over first to the Taxing Districts in proportion to the taxes due them.

[5] The trial court opinion erroneously refers to Section 515 of the Law.

Spruce Creek contends that: (1) the Agreement does not violate the Law; (2) if any of the provisions of the Agreement are invalid the severability clause set forth therein saves the rest of the Agreement and (3) if the Agreement is disapproved, the trial court must set forth a minimum sale price at which the land can be sold by the Bureau.

It is apparent to us that one of the purposes of the provisions of the Law with which we are here concerned is to get real property back on the tax rolls by getting it into the hands of taxpayers on terms that are advantageous to the Taxing Districts. *See Private Sale of County Owned Lands,* 40 Pa. D. & C. 2d 301 (1965).[6] In performing its statutory duty, in circumstances such as those present here, the trial court possesses full discretion over the approval or disapproval of any proposed private sale. *McKees Rocks Borough School District Petition,* 360 Pa. 285, 62 A.2d 20 (1948). *See also Baton Coal Co. Appeal,* 365 Pa. 519, 76 A.2d 194 (1950).

Our scope of review, therefore, would seem to be limited to a determination of whether the trial court abused its discretion. We hold that it did not.

Here, the trial court observed that the Agreement was entered into as part of a settlement agreement terminating an action in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 82-5198) brought by Spruce Creek against the

---

[6] In *Private Sale of County Owned Lands,* the court said:
The criterion by which the court is to gauge the merits of a proposed sale is not established as the largest sum which the property will bring, but rather whether the prospective terms of sale satisfy the court that the bargain is proper and to the advantage of all the taxing authorities interested.
40 Pa. D. & C. 2d at 305-306 (citations omitted).

County and others.[7] The settlement agreement provided that the County and Bureau would, within twenty days, enter into an option to purchase agreement with Spruce Creek for the subject premises. As we have noted, the Agreement also provided for the payment of $10,000.00 to the County, presumably to reimburse it for costs and counsel fees involved in the Federal suit.[8] All of this indicates that the Agreement is advantageous to the County, but has no benefit whatever to the Taxing Districts.

We do not agree with the trial court that the Bureau is restricted to a one-year option by virtue of the provisions of Section 702 of the Law, 72 P.S. §5860.702, relating to lease agreements. The provisions of that Section are applicable to real estate purchased by taxing districts and turned over to the Bureau (so-called Article VII Property) rather than property not sold because of insufficient bid (Article VI Property). It, nevertheless, was within the discretion of the trial court to determine whether a four-year option was unreasonable in light of the various exploratory privileges granted to Spruce Creek during the option period.

While the Taxing Districts may have no direct interest in the obligation assumed by the County and Bureau to grant easements over other lands in the possession of or to be acquired by the County or Bureau, the trial court could take this factor into consideration in determining whether the bargain was proper.

---

[7] The action was an anti-trust suit involving lease agreements between the County and parties other than Spruce Creek relating to real property held by the Bureau for delinquent taxes including the subject premises.

[8] Since there is nothing in the Agreement specifying what the payment is for, we cannot say at this time that Section 205 of the Law, 72 P.S. §5860.205, impacts upon that sum, but suffice it to say that no part of the $10,000.00 was ever intended to be passed along to the Taxing Districts.

Finally, the provision in the Agreement which called for the Bureau to execute and deliver deeds in escrow before the price was approved by the court, clearly violates Section 615 of the Law, 72 P.S. §5860.615. Again, this may not directly affect the Taxing Districts but is another indication in support of the trial court's conclusion that the Agreement was for the advantage of the County/Bureau and not the Taxing Districts.

We are of the opinion that the trial court did not abuse its discretion in holding the Agreement was violative of the Law in the several specific aspects hereinbefore noted.

Regarding the severability clause, the trial court held that inasmuch as the instant suit was not to enforce the contract but rather a statutory proceeding to determine whether the Agreement, if enforced, would be advantageous to the Taxing Districts, Spruce Creek's argument that the remainder of the Agreement was enforceable, was without merit. We are inclined to agree. The whole Agreement is tainted with the principal, if not the only, reason why it was negotiated, to wit, to extricate the County from a law suit. Even though the effect of the Agreement would be to restore the real estate to the tax rolls at least tentatively, the trial court could and did find other factors in the Agreement which militated against the interest of the Taxing Districts.

Section 613 of the Law, 72 P.S. §5860.613, provides that if the court disapproves of a sale, it must then fix the price below which the property cannot be sold. Here, the court disapproved the sale but did not fix a price at which it could be sold. The trial court states that the reason it did not do so is that the provision in the statute only applies wherein the court finds the bid price insufficient. The court noted that the testimony it heard was not directed to the valuation of the various tracts involved because the Agreement encompassed

more than the purchase of the 6500 acres; it involved easements and obligations of the County/Bureau as to real estate not yet subject to tax sale and the discontinuation of the Federal law suit. In sum, the trial court found that no bid price had been fixed for the subject tracts in and of themselves, and there was no testimony in that regard; in effect, there was no bid for the real estate per se.

It appears to this Court that the trial court did properly exercise its discretion and did perform its statutory duty to the extent it was required to do so by virtue of the terms of the Agreement before it.

We, accordingly, would affirm the trial court should the merits of the appeal before us be deemed to be timely filed.

### ORDER

The order of the Court of Common Pleas of Schuylkill County entered August 27, 1984 is affirmed. The Appellants' appeal from the orders of the Court of Common Pleas of Schuylkill County entered September 27, 1985 and December 10, 1985 is dismissed as untimely filed.