## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Noto and Zillow, Inc.,       :
            Appellants      :
                          :
          v.             :
                          :  No. 194 C.D. 2025
Luzerne County             :  Argued: April 15, 2026

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MATTHEW S. WOLF, Judge
              HONORABLE STELLA M. TSAI, Judge

OPINION BY
JUDGE COVEY                                FILED: June 9, 2026

        Susan Noto (Noto) and Zillow, Inc. (Zillow) (collectively, Appellants) appeal from the Luzerne County (County) Common Pleas Court's (trial court) January 15, 2025 order denying and dismissing their appeal. Appellants present two issues for this Court's review: (1) whether Section 1307(b)(2) and (4) of the Right-to-Know Law (RTKL)[1] permits agencies to charge a fee for public records based on the market value of the records, rather than the reasonable market value for duplicating the records; and (2) whether the County, in bad faith, imposed a fee intended to recoup its costs of acquiring and maintaining the requested data, rather than just its duplication costs. After review, this Court affirms.

        On or about February 26, 2024, Noto submitted an RTKL request to the County seeking "[a]n electronic copy of the 2023 Assessment Files, including

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.1307(b)(2), (4) (relating to duplication fees).

property appraisal information sometimes referred to as '[Computer-Assisted Mass Appraisal (]CAMA[)] Data' for all parcels in [] [the] County in one of the following electronic formats: Excel, Text, CSV."[2]  Reproduced Record (R.R.) at 244.[3]  On March 1, 2024, the open records officer for the County's assessment office responded to Noto that the information sought in the RTKL request was available on the County's website and the fee for 2024 was $10,100.00.  *See* R.R. at 242.  On or about March 12, 2024, Noto appealed from the County's response to the Office of Open Records (OOR).

> By March 19, 2024 correspondence, the County declared:
>
> The last time Zillow sent a[n RTKL] request, [it] did the same thing when [it] received the charges.  This is not a matter for [the] OOR.
>
> [Zillow] can take it up with the [l]egislature if [it is] in disagreement.
>
> Further, the information is right on [the County's] website and does not require a[n] RTK[L] request.
>
> www.luzernecounty[.]org  Certified  Tax  Rolls/Data Purchasing | Luzerne County, PA

R.R. at 257.

In their March 21, 2024 initial position statement, Appellants argued to the OOR that the RTKL does not permit the County to charge a fee for the data Appellants requested and that comparing fees among the various counties for the data Appellants requested does not provide a reasonable market value for the same.

---

[2] CSV refers to a comma-separated values file, which is a plain text data format for storing tabular data where the fields/values are separated by a comma and each record is a line.

[3] In the Reproduced Record, Appellants did not number the pages with a small "a" as required by Pennsylvania Rule of Appellate Procedure 2173.  *See* Pa.R.A.P. 2173 (providing "the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures. . . : thus 1, 2, 3, etc., followed . . . by a small a, thus la, 2a, 3a, etc. . . .").  For convenience, the page numbers referenced herein are consistent with the Reproduced Record.

In their April 3, 2024 supplemental position statement, Appellants also asserted that the County acted in bad faith in coordinating its fee with its sister counties. In support of their arguments, Appellants included copies of email communications transmitted in and around March 2024, between various county assessment office officials. The responsive emails from the County's tax assessment official included a table demonstrating that, as of the time of the email, the County had an established fee rate for CAMA Data requests of $0.06 per parcel, which was less than some of the other counties that charged fees varying from a county-wide flat fee to per-parcel rates ranging from $0.04 to $0.17 per parcel.

On May 1, 2024, the OOR denied Appellants' appeal. Appellants appealed to the trial court. On January 15, 2025, the trial court denied and dismissed Appellants' appeal. Appellants appealed to this Court.[4, 5]

---

[4] This Court's "review of a trial court's order in a[n] RTKL dispute is 'limited to determining whether findings of fact are supported by [substantial] evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision.'" *Butler Area Sch. Dist. v. Pennsylvanians for Union Reform*, 172 A.3d 1173, 1178 n.7 (Pa. Cmwlth. 2017) (quoting *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011)). "The scope of review for a question of law under the [RTKL] is plenary." *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672, 674 n.2 (Pa. Cmwlth. 2010) (quoting *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n.4 (Pa. Cmwlth. 2010), *aff'd*, . . . 45 A.3d 1029 ([Pa.] 2012)).

*In re Melamed*, 287 A.3d 491, 497 n.11 (Pa. Cmwlth. 2022) (quoting *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.8 (Pa. Cmwlth. 2019)).

[5] On September 30, 2025, Appellants filed an Application to Supplement Record with Relevant, Newly Discovered Evidence (Application) seeking to supplement the record with a recent RTKL response from Lawrence County which is now charging Appellants a fee of almost one-half million dollars for the production of similar tax assessment records as requested herein. On October 14, 2025, Appellees opposed the Application. By November 24, 2025 Order, this Court directed that the Application be addressed with the merits of the appeal. Because Lawrence County is not a party to this appeal or any of the underlying actions, and a Lawerence County RTKL decision concerning requested documents issued 9 months following the trial court's

Appellants first argue that Section 1307(b) of the RTKL is ambiguous because it permits agencies to charge a fee for public records based on a factually nonexistent and legally impossible market value of the records, rather than the reasonable market value for duplicating the records. Appellants contend that to resolve this ambiguity, this Court must apply the rules of construction, which lead to just one conclusion: the RTKL provision concerning limits on duplication fees should be construed as limiting those fees to the reasonable market value of the duplication services. Appellants insist that this construction is plausible and enforceable because markets for duplication services exist, whereas a market for county tax assessment information does not. Appellants assert that this construction comports with and effectuates the RTKL's statutory language and legislative intent to limit duplication fees.

The County rejoins that the trial court correctly interpreted the RTKL. Specifically, the County retorts that Section 1307 of the RTKL permits the assessment of fees for integrated property assessment lists, including CAMA Data, based on the reasonable market value of the same or closely related data sets. The County further asserts that the trial court properly took notice that this Court defined the term *market value* in the context of real property tax assessment purposes as "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell[.]" *In re Appeal of/Prop. of Cynwyd Invs.*, 679 A.2d 304, 307 (Pa. Cmwlth. 1996) (quoting *Deitch Co. v. Bd. of Prop. Assessment*, 209 A.2d 397, 400 (Pa. 1965) (cleaned up)). The County insists that since Appellants possessed the ability to reconstruct the data sought through means other than those contemplated by their underlying request for CAMA Data on a parcel-by-parcel

decision in the instant action, and 17 months after the OOR's determination from which the instant appeal was filed, have no bearing on the appeal before this Court, the Application is denied.

4

basis, they should be considered willing, but not obliged, to pay the County's fee. The County emphasizes that it was willing, but not obliged, to provide the underlying records, evidenced by its explanation that it could provide the subject records to Appellants for the fee, which other entities seeking the same records have paid, further supporting the County's stated market value. Lastly, the County maintains that the trial court correctly held that the term *copying*, as used in Section 1307 of the RTKL, is a general term denoting a means of duplication and is not strictly limited to a specific method of duplication such as photocopying, which, in this current technological age, is an antiquated duplication method.

Section 1307(b) of the RTKL provides:

**Duplication.--**

(1) Fees for duplication by photocopying, printing from electronic media or microfilm, copying onto electronic media, transmission by facsimile or other electronic means and other means of duplication shall be established:

(i) by the [OOR], for Commonwealth agencies and local agencies;

(ii) by each judicial agency; and

(iii) by each legislative agency.

(2) **The fees must be reasonable and based on prevailing fees for comparable duplication services provided by local business entities**.

(3) Fees for local agencies may reflect regional price differences.

(4) **The following apply to complex and extensive data sets**, **including** geographic information systems or **integrated property assessment lists**.

(i) **Fees for copying may be based on the reasonable market value of the same or closely related data sets**.

5

(ii) Subparagraph (i) shall not apply to:

(A) a request by an individual employed by or connected with a newspaper or magazine of general circulation, weekly publication, press association[,] or radio or television station, for the purpose of obtaining information for publication or broadcast; or

(B) a request by a nonprofit organization for the conduct of educational research.

(iii) Information obtained under subparagraph (ii) shall be subject to paragraphs (1), (2) and (3).

65 P.S. § 67.1307(b) (text emphasis added).

The Pennsylvania Supreme Court has instructed:

"In deciding matters of statutory interpretation, [the Supreme Court] appl[ies] the guidelines set forth in the Statutory Construction Act [of 1972 (Statutory Construction Act)]," *see* 1 Pa.C.S. §§ 1501-1991, "which provides that the object of statutory interpretation is 'to ascertain and effectuate the intention of the General Assembly.'" *Commonwealth v. Crosby*, . . . 329 A.3d Pa.C.S. § 1921. "Generally, the plain language of the statute provides the best indication of legislative intent." *Id*. (internal quotations and citation omitted). "When the statutory language is ambiguous, however, we may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c), and other rules of statutory construction." *Crawford v. Commonwealth*, . . . 326 A.3d 850, 885 ([Pa.] 2024).

*Commonwealth v. Linton*, 337 A.3d 467, 474 (Pa. 2025) (emphasis omitted).

In *Weiss v. Williamsport Area School District*, 872 A.2d 269 (Pa. Cmwlth. 2005), this Court resolved a question of law as to the propriety of a fee the school district charged under the former act commonly known as the Right-to-Know Act (Act), Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1-66.9,

6

repealed by the RTKL.[6]  Therein, the petitioner presented evidence of fees for duplication services provided by Mailboxes, Etc., the Print Shoppe, Staples, and Yoas, while the school district presented evidence of fees for duplication services provided by Lycoming County, Lycoming College, the Pennsylvania College of Technology, and Northwest Savings Bank.[7]  The petitioner argued that the school district's examples were from colleges, counties, and other government entities, and not examples of *local business entities*, and that the petitioner presented *local businesses that provide duplication services* for the public's use.  The trial court found that the school district provided more accurately comparable businesses, in that a school is more similar to a county or government office or college than a business supply-type store.  This Court affirmed.  Based on *Weiss*, this Court rejects Appellants' argument that Section 1307(b) of the RTKL should be construed as limiting duplication fees to the reasonable market value of the duplication services simply because markets for duplication services exist.

In addition, given that the requested CAMA Data consists of *complex and extensive data sets*, and the data requested among the Counties is the same data Appellants requested herein, comparing fees charged by the various Pennsylvania counties to produce that data appears to provide the *reasonable market value* of the same or closely related data sets, as specified in Section 1307(b)(4) of the RTKL.

Here, the OOR determined:

When considering the instant [] challenge to the fees charged for the same information requested from other counties, the OOR has recently and consistently concluded that the CAMA [D]ata is a complex and extensive dataset and comparing the County's fee to other counties with comparable composition, the County has demonstrated

---

[6] Former Section 7 of the Act relates to fees for duplication and is similar to Section 1307 of the RTKL.

[7] The Opinion does not state what records the petitioner requested.

that $0.06 constitutes "fair market value," and it is permitted to charge such a fee per parcel for the responsive records.

OOR Final Determination at 5.

Similarly, the trial court concluded:

The record certified to th[e trial c]ourt for review includes a summary of per-parcel rates charged by various Pennsylvania counties for production or duplication of the similar data sets specific to those counties. As the County's per-parcel rate is both equivalent to the median fee of - and falls below the mean or average fee of - those 15 counties whose per-parcel rate was entered into evidence, it cannot be said that the County's per-parcel rate is unreasonable. The total cost is a function of the number of parcels for which information is sought by a given requester. Regardless of the number of parcels for which information is sought, [Appellants] are subject to the same reasonable per-parcel rate as determined by review of the rate charged for the same or closely related "complex and extensive data sets" such as the "CAMA Data" requested here.

Trial Ct. Op. at 12. This Court discerns no error in the OOR's or the trial court's reasoning. Accordingly, this Court holds that the County's fees are reasonable and based on the reasonable market value of the same or closely related data sets.

Appellants next argue that the trial court erred by finding that the County did not act in bad faith in this case. Specifically, Appellants contend that the bad faith evidence is uncontroverted and consists of the County's own emails showing: (1) its intent to use the RTKL duplication fees to recoup the costs of collecting and maintaining data; (2) an animus against Zillow based on a statutorily forbidden consideration of Zillow's purported purposes in seeking tax information; and (3) collusion with other counties in an attempt to work up a fig leaf defense for the exorbitant fees that many of them are now attempting to impose.

8

The County rejoins that the trial court correctly concluded that substantial record evidence supported the fee the County sought from Appellants for the CAMA Data and, thus, the County did not act in bad faith pursuant to Section 1304 of the RTKL, 65 P.S. § 67.1304. The County further retorts that it did not overtly deny Appellants' request for the CAMA Data; rather, in its initial response to Appellants' request, the County immediately tendered access to the exact data set that Appellants wished to access, for a reasonable market value fee. The County further asserts that the evidence Appellants provided to support their claim that various Pennsylvania counties conspired to improperly fix pricing for CAMA Data actually demonstrated a good faith attempt - initiated by an Adams County official who is not a party to the subject suit or instant appeal - to poll counties to determine the *reasonable market value* of CAMA data sets in order to comply with Section 1307 of the RTKL. The County emphasizes that, as it established the fee rate it charged Appellants for the requested records before Adams County made its inquiries, it clearly did not change its fee rate based on Appellants' records request, and its fee was within the mean of per-parcel rates the responding counties charged, the trial court properly concluded that the County did not act in bad faith with respect to the fee it charged Appellants.

Section 1304(a) of the RTKL provides:

**(a) Reversal of agency determination.--If a court reverses the final determination of the appeals officer** or grants access to a record after a request for access was deemed denied, **the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds** either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise **acted in bad faith** under the provisions of th[e RTKL]; or

9

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

65 P.S. § 67.1304(a) (text emphasis added). "Section 1304(a)(1) [of the RTKL] 'permit[s] recovery of attorney fees when the receiving agency determination is reversed, and it deprived a requester of access to records in bad faith.' [*Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 197 A.3d 825, 835 (Pa. Cmwlth. 2018) (Simpson, J., single judge op.) (*Uniontown Newspapers I*)]." *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 243 A.3d 19, 34 (Pa. 2020) (*Uniontown Newspapers II*).[8]

Here, this Court has made no such reversal or grant of access in this matter. To the contrary, and as explained *supra*, this Court agrees with the County that it need not produce the materials Appellants requested unless Appellants pay the required duplication fee. Further, the County's response was made in good faith and provided Appellants with the means to access exactly those records Appellants seek. Accordingly, this Court has no reason to award Appellants reasonable costs of litigation.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[8] *Uniontown Newspapers II* affirmed *Uniontown Newspapers I*.

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Noto and Zillow, Inc.,    :
     Appellants   :
           :
           :
   v.        :
           : No. 194 C.D. 2025
Luzerne County     :

## O R D E R

AND NOW, this 9th day of June, 2026, Susan Noto's and Zillow, Inc.'s Application to Supplement Record with Relevant, Newly Discovered Evidence is DENIED.  The Luzerne County Common Pleas Court's January 15, 2025 order is AFFIRMED.

_____
ANNE E. COVEY, Judge